UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RANDY M. LITTLE,

                           Plaintiff,              DECISION AND ORDER

-vs-

                                                  1:18-CV-1363 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

_____

INTRODUCTION

Plaintiff Randy M. Little brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Aug. 6, 2019, ECF No. 9; Def.'s Mot., Nov. 6, 2019, ECF No. 12. For the reasons set forth below, judgment on the pleadings (ECF No. 9) is granted, the Commissioner's motion (ECF No. 12) is denied, and the ALJ's decision is reversed. The matter is remanded to the Commissioner for further proceedings consistent with this decision pursuant to sentence four of 42 U.S.C. 405(g).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. Plaintiff filed his DIB application on March 26, 2015,

alleging an onset date of April 24, 2013. Transcript ("Tr.") 228, June 7, 2019, ECF No. 7. Plaintiff also filed an application for SSI benefits on March 26, 2015. Tr. 220. On June 23, 2015, the Commissioner notified Plaintiff that he did not qualify for either DIB or SSI benefits. Tr. 163. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 172.

Plaintiff's request was approved and the hearing was held in Buffalo, New York on October 20, 2017. Tr. 27. Plaintiff appeared with his attorney, Kelly Laga Chandra. Tr. 29. Vocational expert Michael Klein testified by telephone. Tr. 57–64. In her opening statement, Attorney Chandra summarized Plaintiff's impairments for the ALJ:

> Initially, it was following the testicular groin mass removal . . . the [consultative examiner] kind of had indicated there might be nerve entrapment . . . Since then, we also have the issues with anxiety disorder and depressive disorder which began to affect him.
>
> And then, the development of . . . lumbar degenerative disc disease and stenosis, cervical stenosis, spondylosis and herniated discs. And, he's had two cervical surgeries and despite that, he still had continued [cervical] instability and pseudoarthrosis.

Tr. 30.

In her decision on December 4, 2017, the ALJ found that Plaintiff was not disabled. Tr. 10. On October 3, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

2

## STANDARD OF REVIEW

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on a claim for DIB benefits. A reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp.3d 260, 264 (W.D.N.Y. 2014) (citations omitted). To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an

analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). It is not the reviewing court's function to determine *de novo* whether a plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).

## DISCUSSION

The law defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the

claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville*, 198 F.3d at 51. At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

In her decision in this case, the ALJ found that the Claimant met the insured status requirements of the Social Security Act only through June 30, 2013. Tr. 13–14. Thus, the ALJ observed that Plaintiff "must establish disability on or before that date in order to be entitled to a period of . . . [DIB] benefits." Tr. 14. The ALJ then followed the five-step sequential evaluation process and found that Plaintiff was not disabled from April 24, 2013 through December 4, 2017, the date of her decision. Tr. 15–21.

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2013. Tr. 15. At step two of the analysis, the ALJ determined that Plaintiff had the following severe impairments: status post orchiectomy in 2013; status post cervical discectomy and fusion; lumbar disc degeneration; foraminal stenosis; left shoulder degenerative joint disease and cervical spondylosis. Tr. 15–16. Notably, the ALJ found that Plaintiff's mental

5

impairments,[1] considered either individually or in combination, do not cause more than minimal limitation to Plaintiff's work capacity and are therefore non-severe. Tr. 16. In so finding, the ALJ considered the four "paragraph B" areas of mental functioning in 20 C.F.R. Part 404, Subpart P, App'x 1 ("App'x"). To satisfy the paragraph B criteria, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. App'x, § 12.00(A)(2)(b). The ALJ found Plaintiff had no limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. Tr. 16. In the fourth functional area, adapting or managing oneself, the ALJ found the Plaintiff was mildly limited. Tr. 16.

At step three, the ALJ determined that Plaintiff's physical impairments, considered either individually or in combination, did not meet or medically exceed the severity of one of the Commissioner's listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 13.

Before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After considering the

---

[1] As Plaintiff's mental impairments, the ALJ listed "anxiety disorder, panic disorder without agoraphobia, social anxiety disorder, affective disorders-major depressive disorder partial remission and rule out cannabis disorder." Tr. 16.

6

entire record, the ALJ determined that Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except is able to stand and walk for up to 5 hours in a workday but only for 30 minutes at a time; can occasionally stoop, kneel, crouch, crawl, push/pull bilaterally; can occasionally reach overhead bilaterally; can occasionally operate foot controls bilaterally.

Tr. 18. Based on this RFC, the ALJ found that Plaintiff was unable to perform any of his past relevant work as an electrician or HVAC installer. Tr. 20. However, based on vocational expert Michael Klein's testimony, at step five the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 21. Representative occupations that Plaintiff could perform include a marker labeler, a bagger, and a produce weigher. Tr. 21. Hence, the ALJ concluded that Plaintiff was not disabled between April 24, 2013 and December 4, 2017. *Id.*

In seeking reversal of the Commissioner's decision, Plaintiff argues the ALJ committed three errors: (1) determining the Plaintiff's residual functional capacity without a medical source opinion addressing Plaintiff's lumbar and cervical spine impairments; (2) failing to incorporate Plaintiff's limitation in dealing with stress observed by consultative examiner Dr. Billings; and (3) discounting Plaintiff's subjective complaints based on the ALJ's interpretation of the medical records. Pl. Mem. of Law, 10, Aug. 6, 2019, ECF No. 9-1. For the reasons that follow, this Court finds that the RFC determination was not supported by substantial evidence and that the matter must be remanded for further administrative proceedings.

The ALJ's RFC Determination

As noted above, Plaintiff applied for DIB and SSI benefits in 2015, with an alleged onset date of April 24, 2013 for the purposes of DIB. However, while Plaintiff's application was pending, he began seeing Dr. Jeffrey Lewis at the Buffalo Neurosurgery Group, and ultimately had two surgeries on his cervical spine: an anterior cervical discectomy and fusion at C4-5, C5-6, and C6-7 on March 15, 2016; and a posterior cervical fusion from C4 to C7 on June 9, 2017. *See, e.g.,* Tr. 553, 555. Noting that the medical opinions in the record date back to 2015, Plaintiff argues that the ALJ erred in making an RFC determination "without any [medical] opinion postdating the Plaintiff's neck surgeries." Pl. Mem. of Law at 11.

In explaining her RFC determination with respect to Plaintiff's physical impairments in this case, the ALJ's decision reviewed Plaintiff's testimony about his symptoms, the opinion evidence, and the medical evidence in the record.

With respect to Plaintiff's hearing testimony, the ALJ noted:

> The claimant experiences neck pain and reports that the pain affects his sleep and keeps him awake . . . . He is limited in his ability to use the riding mower . . . and is unable to perform yard work because it hurts his groin and hip. He reports feeling pain when lifting, being unable to stand for long and that walking hurts when going up hills or down stairs. He testified that there are repairs at his home that he cannot fix, but that he is capable of doing laundry and he can load and unload the dishwasher. He testified that he tried hunting the year before, but was unable to do it for more than a ½ hour.

Tr. 18–19.

The ALJ failed to mention the significant restriction of neck movement to which Plaintiff testified. For instance, at the hearing, Plaintiff stated that even after his two neck surgeries, "I have a hard time looking up for [sic] left or right." Tr. 51. In response to a question about how long he can actually hold his head up, Plaintiff said, "Normally, I lean back, but I got to put my head on the back of the couch . . . . It gets so painful I pretty much got to lay back on the couch . . . . I can get through a half hour [television] show, but I'd pretty much be leaning back in the couch with my legs out." Tr. 51–52 (internal citations to the record omitted).

With respect to the medical evidence in the record, the ALJ acknowledged a December 2016 MRI of the lumbar spine that revealed advanced disk degeneration with some narrowing and foraminal stenosis. Tr. 19. But the ALJ also pointed out several treatment notes of imaging records:

> A CT of the cervical spine from September 2017 demonstrates no evidence of canal compromise or postsurgical complication; July 2017 cervical spine imaging shows stabilization, devices well placed and visually intact, with no instability.
>
> He experienced decreased neck and arm pain within weeks of his anterior cervical discectomy and fusion. September 2016 imaging of the cervical spine revealed . . . no instability with flexion-extension on the lateral fexion view, and mild flexion was demonstrated at C3-4 . . . . September 2016 imaging of the lumbar spine demonstrated no instability . . . Repeated imaging demonstrates no instability in the lumbar spine.

Tr. 19–20 (internal citations to the record omitted).

As Plaintiff's attorney stated at the hearing, "Buffalo Neurosurgery Group[2] often does not provide [medical opinion evidence] even though we request them . . . so we were not able in our efforts to have providers who like to do" opinion evidence. Tr. 32. Consequently, the only significant medical opinion evidence regarding Plaintiff's physical impairments contained in the record contained is the consultative examination conducted by Michael Rosenberg, M.D., on June 16, 2015, approximately ten months before Plaintiff's first surgery on his cervical spine. Tr. 311. Dr. Rosenberg opined that Plaintiff "has mild to moderate restrictions for carrying heavy objects, performing overhead activity, and activities requiring pulling, pushing, reaching or repetitive use of arms." Tr. 19. The ALJ assigned only "some weight" to Dr. Rosenberg's opinion because it was rendered prior to the two surgeries on Plaintiff's cervical spine. Tr. 19.

Taking the above into account, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms Plaintiff alleged in his testimony, but that Plaintiff's statements about the limiting effects of the symptoms are not entirely consistent with the medical evidence. Tr. 19. As to neck movement and the degree to which Plaintiff is affected by cervical spine impairments, the ALJ found that Plaintiff "can tolerate cervical flexion, rotation and holding his head static, for up to a frequent level." Tr. 20. "'Frequent' means occurring from one-third to two-thirds of the time." *Titles II & XVI: Determining Capability to Do Other*

---

[2] Dr. Lewis of Buffalo Neurosurgery Group was Plaintiff's attending surgeon for his neck surgeries.

*Work-the Med.-Vocational Rules of App'x 2*, SSR 83-10 at *6 (S.S.A. 1983).

20 C.F.R. § 404.1545(a)(3) and § 416.945(a)(3) provide that the Commissioner will assess a claimant's RFC based on all relevant medical and other evidence. Although the claimant is responsible for providing the evidence used to make an RFC determination, before determining that a claimant is not disabled the Commissioner is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his] own medical sources." *Id*. *See also, Grann v. Comm'r of Soc. Security*, No. 18-CV-6556-MJP, 2020 WL 975581, at *2 (W.D.N.Y. Feb. 29, 2020); *Villa v. Colvin*, No. 1:14-CV-00463, 2016 WL 1054757, at *4 (W.D.N.Y. Mar. 17, 2016).

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015). Consequently, "[d]ecisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence." *Smith v. Saul*, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) (collecting cases). When the medical evidence shows only minor physical impairments, it is permissible for an ALJ to render a common-sense determination about RFC without a medical opinion. *Dale v. Colvin*, No. 15-CV-496-FPG, 2016 WL 4098431, at *3 (W.D.N.Y. Aug. 2, 2016). However, the general rule is that where the

11

medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the Commissioner "may not make the connection himself." *Id.* (citing *Wilson*, 2015 WL 1003933, at *21; *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015)).

In this case, the record lacks a medical opinion as to Plaintiff's capacity to move his neck in a work setting following two surgical procedures on his cervical spine, with a third surgery potentially required on his lumbar spine.[3] Plaintiff's testimony suggests he has trouble holding his head up for a half-hour television show, and that he can walk for only about two hundred feet before he has to turn around and walk home. Tr. 38–39. Further, the testimony of the vocational expert suggests that the ability to only occasionally – rather than frequently – engage in cervical flexion, rotation and holding head static would require "more accommodative work" than the jobs in the national economy the expert testified the Plaintiff could perform. Tr. 62–63. Yet the ALJ, who is not a medical professional, somehow determined that Plaintiff could perform light work relying in part on a routine examination of Plaintiff's spine during a urology appointment[4] that revealed "the spinal contour is

---

[3] Office notes from Plaintiff's visits to the Buffalo Neurosurgery Group indicate that Plaintiff and his doctors were also considering a "lateral lumbar fusion in order to help his lower back pain and lower extremity radiculopathy." Tr. 566.

[4] After noting that Plaintiff reported radicular symptoms going down to his calves, and neuropathy in his bilateral arms to his treating surgical team at the Buffalo Neurosurgery Group, the ALJ offers notes from Plaintiff's visit to Western New York Urology Associates to evaluate Plaintiff's prostate. Tr. 354–355. The juxtaposition seems inapposite, at best.

normal with no tenderness of the costovertebral angle and his lumbar spine shows no instability." Tr. 20.

The Court finds that the medical evidence in the record, which contains complex medical records like CT scans, EMG results, and MRI readings, and concerns a highly complex system like the spine, does not permit the ALJ to render a common-sense judgment about functional capacity. *See Dale*, 2016 WL 4098431, at *3. Without a function-by-function assessment relating this evidence to the physical demands of light work or reliance on a medical source's opinion as to Plaintiff's functional capacity, the ALJ's decision does not afford an adequate basis for meaningful judicial review. *Id.* Accordingly, remand is required for a medical opinion on limitations of Plaintiff's neck movements based on the impairments of his cervical spine and, if required, a redetermination of Plaintiff's RFC and suitability for jobs in the national economy.

Consultative Examiner Rebecca Billings, Ph.D.

Rebecca Billings, Ph.D., performed a consultative examination for Plaintiff's alleged mental impairments on June 16, 2015. Tr. 315. In her medical source statement, Dr. Billings opined, in pertinent part:

> I do not see evidence of limitations in terms of the claimant's ability to follow and understand simple directions and instructions, to perform simple tasks independently, to maintain attention and concentration, to maintain a regular schedule, to learn new tasks, to perform complex tasks independently, or to relate adequately with others. In contrast, he appears to have moderate range limitations in making appropriate decisions, specifically around mental health care, and appropriately dealing with stress.

13

Tr. 319. The ALJ quoted Dr. Billings' opinion in her decision, but assigned it only partial weight because she found the record did not support the opinion that the claimant has a moderate range of limitations in making appropriate decisions. Tr. 17. Further, the ALJ did not mention any stress limitations in the hypotheticals she presented to the vocational expert for the purpose of discerning whether there were jobs Plaintiff could perform in the national economy, and she did not include any stress limitations in Plaintiff's RFC determination. Plaintiff argues that it was error for the ALJ not to incorporate any stress limitation into the RFC, or explain why stress limitations were not included. Pl. Mem. of Law at 17.

Social Security Ruling 85-15 "emphasizes the need to carefully evaluate a claimant's ability to deal with stress in the workplace." *Ridosh v. Berryhill*, No. 16-CV-6466L, 2018 WL 6171713, at *3 (W.D.N.Y. Nov. 26, 2018) (quoting *Sheffield v. Astrue*, No. 3:11-CV-1176 GLS, 2012 WL 5966610, at *2 (N.D.N.Y. Nov. 28, 2012)). As the ruling states:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

*Titles II & XVI: Capability to Do Other Work- The Med.-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15, at *4 (S.S.A. 1985).

To be sure, courts in the Second Circuit have acknowledged that an RFC determination may adequately account for a claimant's stress-related limitations without explicitly referencing a stress limitation. *See, e.g., Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) (collecting cases, but finding the case before the Court did not adequately account for the claimant's stress-related limitations). Nevertheless, although "it may be reasonable for an ALJ to account for a stress-based limitation by including, in the claimant's RFC, restrictions to simple work, with little interaction with others . . . . [i]t is not the function of this Court to . . . supply its own rationale where the ALJ's decision is lacking or unclear." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019) (quoting *Stellmaszyk v. Berryhill*, No. 16cv09609 (DF), 2018 WL 4997515, at *28 (S.D.N.Y. Sept. 28, 2018) (internal quotation marks and citations omitted). That is, whether or not an ALJ explicitly acknowledges a stress-related limitation, she cannot disregard "the duty to adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017); 20 C.F.R. § 404.1527(c).

The Court finds that in this case, the ALJ neither adequately accounted for any stress-related limitations Plaintiff may have had, nor sufficiently explained her reasoning for disregarding Dr. Billings' opinion that Plaintiff has moderate limitations in appropriately dealing with stress. Tr. 17. While the ALJ did acknowledge Dr. Billings' opinion in her decision, and expressly found that Plaintiff's

15

mental limitations were non-severe, this did not satisfy the ALJ's obligation under 20 C.F.R. § 416.945(a)(2) to consider in the RFC all of Plaintiff's medically determinable impairments, including those medically determinable impairments that are not "severe."

Lastly, as stated above, Plaintiff also contends the ALJ erred by discounting Plaintiff's subjective complaints based on the ALJ's interpretation of the medical records. Pl. Mem. of Law, 10, Aug. 6, 2019, ECF No. 9-1. Because this issue may be affected by the Commissioner's treatment of this case on remand, this Court does not reach it. *Ward v. Comm'r of Social Sec.*, 17-CV-1008, 2019 WL 2106507 at *4 (W.D.N.Y. May 14, 2019) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 1990)).

## CONCLUSION

For the reasons discussed above, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 9) is granted, the Commissioner's motion (ECF No. 12) is denied, and the ALJ's decision is reversed. The matter is remanded to the Commissioner for further proceedings consistent with this decision under 42 U.S.C. 405(g), sentence four.

DATED:     March 17, 2019
               Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge